UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TREVON GALMORE and JULIUS
GARRISON,

                         Plaintiffs,

v.

RANDALL R. HEPP and SGT. ZEPTKA,

                         Defendants.

Case No. 23-CV-650-JPS

**ORDER**

      Plaintiffs Trevon Galmore ("Galmore") and Julius Garrison ("Garrison"), who are currently incarcerated in Waupun Correctional Institution ("WCI") and representing themselves, filed a complaint under 42 U.S.C. § 1983, alleging that their civil rights were violated. ECF No. 1. On June 5, 2023, the Court issued an order with various instructions regarding pro se litigation with multiple plaintiffs. ECF No. 3. This Order resolves Plaintiffs' motions for leave to proceed without prepaying the filing fee and screens the complaint.

**1.    MOTIONS FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

      The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiffs Galmore and Garrison were prisoners when they filed the complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On August 4, 2023, the Court ordered Plaintiff Galmore to pay an initial partial filing fee of $10.98 and ordered Plaintiff Garrison to pay an initial partial filing fee of $16.57. ECF Nos. 15, 16. Plaintiff Galmore and Garrison each paid their respective initial partial filing fees on August 16, 2023. The Court will grant Plaintiff Galmore's and Plaintiff Garrison's motions for leave to proceed without prepaying the filing fee. ECF Nos. 2, 8. The Court will accordingly deny the additional motion to proceed without prepayment of the filing fee, ECF No. 12, as moot. Each plaintiff must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

2. **SCREENING THE COMPLAINT**

    2.1 **Federal Screening Standard**

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiffs' Allegations

Plaintiffs allege that on March 28, 2023, Defendant Randall R. Hepp ("Hepp") put WCI on lockdown. ECF No. 1 at 2. On March 30, 2023, Hepp provided correspondence explaining the need for restricted movement. *Id.* Hepp noted the need for a safe, secure, and orderly environment for everyone at the prison. *Id.* Hepp placed WCI on lockdown as a result of serious assaults on staff members. *Id.* In April 2023, the WCI security staff thoroughly searched the whole institution to minimize the threat of getting stabbed. *Id.* After the search was complete, on April 18, 2023, there was no existing threat to staff or inmates. *Id.* at 3. Hepp did not modify movement in the institution and instead maintained the WCI lockdown. *Id.*

Plaintiffs filed their complaint on May 23, 2023, and describe the lockdown conditions as follows: (1) inmates are not being allowed to have three showers per week; (2) staff are not providing access to the law library

and access to the courts; (3) all visiting privileges have been revoked since March 2023; (4) Plaintiffs were "inside [their] cell without any recreation for 2 months"; and (5) certain Caucasian inmates have been chosen by staff to be allowed recreation. *Id.* Plaintiffs have written to psychological services about their mental health and suffering under the oppressive conditions under the WCI lockdown. *Id.* Warden Hepp is not being reasonable in keeping the entire institution under lockdown for months. *Id.*

**2.3   Analysis**

First, although Plaintiffs may be able to state an Eighth Amendment conditions of confinement claim, the Court finds that the current complaint does not contain sufficient factual detail to proceed on this claim. A prisoner's claim of unconstitutional conditions of confinement is analyzed under the Eighth Amendment's cruel and unusual punishment clause. *See Farmer v. Brennan*, 511 U.S. 832, 834 (1994). A prisoner is entitled to live in conditions that do not amount to "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Detainees are entitled to be confined under humane conditions that provide for their "basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]" *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

To establish a constitutional violation with respect to an inmate's living conditions, he must be able to demonstrate both: (1) the conditions were objectively so adverse that they deprived him "of the minimal civilized measure of life's necessities," and (2) the defendants acted with deliberate indifference with respect to the conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer*, 511 U.S. at 834). "Life's necessities include shelter, heat, clothing, sanitation, and hygiene items."

Page 4 of 13
Case 2:23-cv-00650-JPS   Filed 08/29/23   Page 4 of 13   Document 17

*Woods v. Schmeltz*, No. 14-CV-1336, 2014 WL 7005094, at *1 (C.D. Ill. Dec. 11, 2014) (citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)); *see also Budd v. Motley*, 711 F.3d 840, 842–43 (7th Cir. 2013). The Seventh Circuit has made clear that preventing inmates from exercising for prolonged periods may violate the Eighth Amendment. *James v. Pfister*, 708 F. App'x 876, 879 (7th Cir. 2017) (citing *Turley v. Rednour*, 729 F.3d 645, 652 (7th Cir. 2013)).

Here, Plaintiffs allege that they have been inside their cell "without any recreation for 2 months." ECF No. 1 at 3. It is unclear, however, what Plaintiffs mean by this statement or what ability, if any, Plaintiffs have to exercise during the lockdown. When amending the complaint, Plaintiffs should explain what they mean by recreation and should describe what access, if any, they have to exercise during the lockdown (whether in their cell, outdoors, or otherwise). Similarly, as to any other conditions of confinement claims that Plaintiffs wish to proceed on, Plaintiffs should include more factual detail in any amended complaint going forward. For example, Plaintiffs state that they are not being allowed three showers a week. Plaintiffs do not, however, include information as to how many showers they are allowed; two showers per week is a different calculus than zero showers per week. As such, Plaintiffs should take care when amending the complaint to provide the Court enough factual detail to analyze the claims under the Eighth Amendment.

Second, Plaintiffs may not proceed on a Fourteenth Amendment claim for a deprivation of liberty without due process against any defendants. A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient.

*Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994)).

"A prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prisoner life." *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995)). In the absence of an "atypical and significant" deprivation, the procedural protections of the Due Process Clause are not triggered. *Id.* Disciplinary segregation can trigger due process protections. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (citations omitted). When making the determination whether an inmate is entitled to such protections, courts analyze "the combined import of the duration of the segregative confinement and the conditions endured by the prisoner during that period." *Id.* If conditions in segregation are significantly harsher than those in the normal prison environment, then a liberty interest may arise even when the duration of the segregation, standing alone, would not trigger such an interest. *Id.* at 697–98. On the one hand, "six months of segregation is 'not such an extreme term' and, standing alone, would not trigger due process rights." *Id.* at 698 (quoting *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995)). On the other end of the spectrum, transfer to a maximum-security prison and placement in segregated confinement for an indefinite duration where virtually all sensory and environmental stimuli are denied, little human contact is permitted, and prisoners otherwise eligible for parole are disqualified from parole eligibility, taken together, impose an atypical and significant hardship within the correctional context. *Id.* at 697 (citing *Wilkinson v. Austin*, 549 U.S. 209, 224 (2005)).

Once a liberty or property interest has been invoked, the Court looks to what process was due. Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563–69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).

Here, as described above, Plaintiffs provide sparse details as to the conditions experienced during the lockdown. Plaintiffs allege that for a period of two months they were prevented from taking three showers a week, were denied recreation, and were prohibited from seeing visitors. The Court does not find these conditions alone, for a period of two months, show that Plaintiffs suffered an atypical and significant deprivation. Accordingly, based on the allegations in Plaintiffs' complaint, the Court cannot determine that Plaintiff had a protected liberty interest in avoiding the lockdown. As such, Plaintiff may not proceed on a due process claim at this time.

Third, the Court finds that Plaintiffs may not proceed on an access to courts claim. The Constitution guarantees prisoners a right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 350–51 (1996). But because that right is to access the *courts* rather than legal materials or law libraries, an inmate

will not have a valid claim unless the prison authorities' conduct prejudiced a potentially meritorious challenge to his conviction, sentence, or conditions of confinement. *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009); *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009); *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).

The point of recognizing an access to the courts claim "is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002). The constitutional right of access to court "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415; *see also Lewis*, 518 U.S. at 353 (plaintiff must identify a "nonfrivolous," "arguable" underlying claim). Accordingly, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Harbury*, 536 U.S. at 415.

Here, Plaintiffs' complaint does not meet the basic requirements for an access to courts claim. Although Plaintiffs generally reference that the lockdown has denied access to the law library and access to court, the complaint does not provide any information about how Defendants' actions actually prejudiced a potentially meritorious claim. As such, Plaintiffs may not proceed on an access to courts claim. If Plaintiffs wish to proceed on an access to court claim, they must submit an amended complaint with more detailed information regarding any specific cases and the resulting injury.

Finally, the Court finds that the complaint fails to state an Equal Protection claim. "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based

on race." *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). To state such a claim, a prisoner must allege that the "defendants intentionally treated him differently because of his race … ethnicity, sex, religion, or other proscribed factor…" *Id.* at 719–20 (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016)). Here, Plaintiffs only vaguely allege that Caucasian prisoners have been selected for recreation during the lockdown. Plaintiffs do not, however, allege that any defendants intentionally treated any prisoner differently because of race and do not include any information about their own race. As such, the Court finds that the allegations in the complaint fail to state an equal protection claim.

The Court will allow Plaintiffs the opportunity to file an amended complaint on or before **September 19, 2023.** When writing an amended complaint, Plaintiffs should provide the Court with enough facts to answer the following questions: (1) Who violated their constitutional rights?; (2) What did each person do to violate their rights?; (3) Where did each person violate their rights?; and (4) When did each person violate their rights? Plaintiffs' amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the Court and each Defendant with notice of what each Defendant allegedly did or did not do to violate their rights.

The Court is enclosing a copy of its amended complaint form and instructions. Plaintiffs must list all of the defendants in the caption of the amended complaint. They should use the spaces on pages two and three to allege the key facts that give rise to the claims they wish to bring, and to describe which defendants they believe committed the violations that relate to each claim. If the space is not enough, Plaintiffs may use up to five

Page 9 of 13
Case 2:23-cv-00650-JPS   Filed 08/29/23   Page 9 of 13   Document 17

additional sheets of paper. The amended complaint takes the place of the prior complaint and must be complete, without reference to his prior complaint.

Plaintiffs are advised that the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998). In *Duda*, the appellate court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* at 1057 (citation omitted). If the amended complaint is received, it will become the operative complaint in this action, and the Court will screen it in accordance with 28 U.S.C. § 1915A.

**IT IS ORDERED** that Plaintiff Galmore's motion for leave to proceed without prepaying the filing fee, ECF No. 2, and Plaintiff Garrison's motion to proceed without prepayment of the filing fee, ECF No. 8, be and the same are hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiffs' additional motion for leave to proceed without prepaying the filing fee, ECF No. 12, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that the complaint fails to state a claim;

**IT IS FURTHER ORDERED** that Plaintiffs may file an amended complaint that complies with the instructions in this Order on or before **September 19, 2023.** If Plaintiffs file an amended complaint by the deadline, the Court will screen the amended complaint under 28 U.S.C. § 1915A. If Plaintiffs do not file an amended complaint by the deadline, the Court will

dismiss this case based on the failure to state a claim in the original complaint and will issue each Plaintiff a "strike" under 28 U.S.C. § 1915(g);

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff Galmore shall collect from his institution trust account the $339.02 balance of the filing fee by collecting monthly payments from Plaintiff Galmore's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff Galmore is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff Garrison shall collect from his institution trust account the $333.43 balance of the filing fee by collecting monthly payments from Plaintiff Garrison's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff Garrison is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiffs are confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiffs a copy of the prisoner amended complaint form and the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 29th day of August, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

> Plaintiffs are further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF A PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS HIS ACTION WITHOUT PREJUDICE**.